Hart, J.
The determination of the controversy here involved depends upon the interpretation of certain controlling statutes relating to procedure before the commission. The narrow question at issue may be stated as follows: Was the filing of an application to file a schedule of rates, by the gas company with the commission a “first filing” as contemplated by the provisions of Section 614-20, General Code? If it was a “first filing” under the statute, then the gas company may charge the pottery companies for industrial gas at rates fixed by the schedule subject to approval by the commission. If, on the other hand, it was not a “first filing,” then the order of the commission authorizing the gas company to file a rate schedule should be vacated, and the gas company may secure an increase in industrial gas rates only by complying with the applicable paragraphs of Section 614-20, General Code, with respect to an increase of rates, that is, by filing an application for increase of rates, by filing the required exhibits, by computing and fixing a rate base, and in general by carrying out the provisions of such section.
*502 A brief survey of applicable statutes is necessary to tbe decision of this controversy.
Section 614-16, General Code, provides:
“Every public utility shall * * * file with the commission * * * schedules, showing all rates * * * and charges for service * * * by it rendered or furnished, which were in effect at the time this act takes effect [1911] and the length of time the same has been in force * * *.”
Section 614-17, General Code, provides:
“Nothing in this act shall be taken to prohibit a public utility from filing a schedule or entering into any reasonable arrangement * * * with its customers, consumers or employees * * * providing for a sliding-scale of charges, including variations in rates based upon stipulated variations in cost as provided in the schedule or arrangement, or providing for a minimum charge for service to be rendered * * * or providing for a classification of service based upon the quantity used, the time when used, the purpose for which used, the duration of use, and any other reasonable consideration, or providing any other financial device that may be practicable or advantageous to the parties interested. No such arrangement, sliding scale, minimum charge, classification, variable rate or device shall be lawful unless the same shall be filed with and approved by the commission. * * *”
Section 614-19, General Code, provides that the rates contained in existing contracts “shall not be construed as constituting a discrimination, or undue or unreasonable preference, or advantage within the meaning specified. ’ ’
Section 614-20, General Code, provides:
“No rate * * * shall become effective until the commission, by order, shall determine the same to be just and reasonable * * *.
“Any such public utility desiring to establish any *503 rate * * * shall file a written application with the commission. Snch application * * * shall contain a schedule of the existing rate * * * together with a schedule of the modification amendment, change, increase or reduction sought to be established * * If such application is not an application for an increase in any rate * * * the commission shall permit the filing of the schedule proposed in the application and fix the time when the same shall take effect.
“If said application is for an increase in any rate * * * there shall also, unless otherwise ordered by the commission, be filed therewith * * * the following exhibits:
“A — A detailed inventory and appraisal of its property used and useful in rendering the service referred to in such application.
“B — A complete operating statement of its last fiscal year * * *.
“C — A statement of the income and expense anticipated under the application filed.
“Upon the filing of any such application for increase the public utility shall forthwith publish the substance and prayer thereof * * *. If no objection to such report is made by any party interested within thirty days after the filing of the same with the commission * * * the commission shall fix a date within ten days thereafter for the final hearing upon said application * * * and at such time shall consider the matters set forth in said application and make such order respecting the prayer thereof as to it seems just and reasonable.” The statute then provides, in detail, for a full hearing upon the application.
Section 614-21, General Code, provides:
“Upon complaint in writing, against any public utility, by any person * * * that any rate * * * is in any respect unjust * * * or in violation of law * * * the commission shall notify the public utility com *504 plained of that complaint has been made * * V’ The statute then sets out provisions for a hearing.
The pottery companies assert that the rates now being charged by the gas company are illegal, and that to allow it to collect this tariff as a “first filed” tariff is to allow it to benefit from its own derelictions in not filing with the commission its several contracts theretofore entered into with the pottery companies, under the provisions of Section 614-17, General Code. The pottery companies ask that the commission vacate its order of October 30, 1952, authorizing the filing of a rate schedule on a “first filing” basis.
On the other hand, the position of the gas company is that the filing of the tariff or schedule of rates, which was approved by the commission, was a “first filing,” and that, as a consequence, the sole remedy of the pottery companies is by a proceeding before the commission under Section 614-21, General Code, on a claim of the unreasonableness of the rates approved and charged; and that any failure of the gas company to file its previous contracts with the commission does not invalidate the present rate schedule.
The pottery companies claim the commission erred in its interpretation of Sections 614-16, 614-17 and 614-20, General Code, to the effect that the application of the gas company to the commission for approval of rates was a “first or original filing” and not an application for an increase of rates.
The controversy in the instant case centers on the interpretation to be given that part of Section 614-20, which provides that “if such application is not an application for an increase in any rate * * * the commission shall permit the filing of the schedule proposed in the application and fix the time when the same shall take effect.”
It is conceded that the statute permits the commission to give perfunctory approval to an application *505 not involving a rate increase. This necessarily includes an application either to establish for the first time a rate or to reduce a rate once established. This procedure comprehends “an original or first filing.”
It is the contention of the pottery companies that the gas company was not entitled to have its rates approved by the commission under these provisions of the statute, first, because it had failed to file its contracts with the commission as required and, second, because it finally filed a schedule of rates in excess of those rates previously charged under its last contracts with the pottery companies for the same type and land.of service; and that for these reasons the commission was without authority to approve the rates contained in the schedule.
The record discloses that, although the gas company is a public utility and its operations admittedly are amenable to the jurisdiction of the commission, nevertheless, prior to the filing of the application and proposed schedule here involved, that jurisdiction had never been previously invoked by the gas company, its customers or by the commission itself on its own motion, relative to rates charged for gas service. In fact, there is evidence in the record that the commission discouraged such filing.
Under the statute, the only penalty imposed for failure to file such contracts with the commission is that the contracts shall not be lawful. As a result, all parties are equally interested in the filing of the contracts and doubtless any of the parties to the contracts could have filed them and made them valid. In fact, this court has heretofore approved this procedure. In the case of Columbus, Delaware & Marion Electric Co. v. Public Utilities Commission, 119 Ohio St., 282, 163 N. E., 914, the electric company and the Alloy Cast Steel Company of Marion entered into a contract on August 13, 1926, providing for the furnishing of *506 electric energy by the former to the latter. This contract was filed with the commission on January 16, 1928, and on January 18, 1928, the commission approved the contract and ordered the electric company to conform its schedule of rates to such contract.
On January 17, 1928, the electric company filed with the commission a certain schedule of rates to become effective 30 days thereafter, prescribing rates for the service used by the steel company under its contract. The commission ordered the schedule filed by the electric company stricken from the files because it was at “variance with the rates for the same class of users of the service therein provided for as set forth in the aforesaid contract.” The electric company appealed to this court, which affirmed the. commission’s order, holding that the commission’s approval of the schedule “was in accordance with the provisions” of Section 614-17, General Code.
It is important to note that the filing with the commission of a private contract, between a utility and its customers for utility service, for approval is distinct and separate from the filing of an application to establish rates. The failure of the gas company to file previous contracts with the commission for its approval, as a matter of fact, had nothing to do with its right to file with the commission an application to establish rates. The filing of such contracts with and their approval by the commission did not obligate the utility to serve customers other than those with which it had contracts, but when the utility filed a schedule of rates subject to approval by the commission, the utility thereby, for the first time, became obligated to serve without discrimination all applicants within its area with its type of service at the rates fixed by the schedule.
The “first” or original “filing” of such a schedule is in no way influenced or controlled by the filing of or *507 failure to file previous private contracts with consumers. It is true that the gas company in the instant case, in compliance with Section 614-20, General Code, set out in its application, for the information of the commission, the rates for which the company was seeking approval and which were identical with those it was then charging its industrial customers. Those contract rates had never been approved as a schedule of rates. It is untenable to assert that the filing of a contract presupposes the coexistence of a rate schedule or that a filed contract in the absence of an approved rate schedule constitutes a rate schedule itself.
No previous schedule of rates had been filed for approval and none had been approved. The jurisdiction of the commission in this regard had never previously been invoked by either the gas company or its customers, and as a result, the filing of the application here in question could not be for an increase in rates. It was in fact, as the record shows, a first and original filing of such an application for approval of a schedule of rates and was properly so treated by the commission.
The order of the Public Utilities Commission dismissing the complaint of the pottery companies is affirmed.

Order affirmed.

Middleton, Taet, Zimmerman, Stewart and Lamneck, JJ., concur.